UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-61729-CIV-COHN/SNOW

MIAMI YACHT DIVERS, INC.,
a Florida Corporation,

        Plaintiff,

vs.

M/V ALL ACCESS, United States Coast Guard
Documentation Number 1119944, Hull Number
XSK010161899, her engines, tackle, appliances,
appurtenances, furniture, gear and all other
necessaries thereto and belonging, in rem,
JEFFREY B. COHEN, an Individual, in personam,
WACHOVIA BANK, N.A., a foreign business entity,
in personam, and XL INSURANCE COMPANY
OF NEW YORK, INC., f/k/a GREAT LAKES
REINSURANCE (UK) plc, a foreign business
entity, in personam,

        Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS CAUSE** came before the Court for nonjury trial on August 22, 2007. Plaintiff Miami Yacht Divers, Inc. filed an action against Defendants M/V All Access, *in rem*, and Jeffrey B. Cohen, Wachovia Bank, N.A. and XL Insurance Company of New York, Inc., *in personam*, seeking payment for the salvage of the M/V All Access. During and after the trial, the undersigned reviewed the evidence admitted, and considered the applicable law and arguments presented by counsel. The following findings of fact and conclusions of law are therefore made pursuant to the requirements of Federal Rule of Civil Procedure 52.

## FINDINGS OF FACT[1]

1. Defendant Jeffrey B. Cohen ("Cohen") was the owner of the M/V All Access ("All Access") on October 24, 2005, and at all times relevant to this action.

2. The All Access is a 48-foot Sunseeker motor yacht. At all times relevant to this action, the vessel was moored in Ft. Lauderdale, on the Del Mar Canal in the Las Olas area of Ft. Lauderdale, Florida. The navigable canal runs east-west and opens directly into the Intracoastal Waterway. This is a residential housing area with vessels of all sizes moored to docks/pilings and vessel lifts.

3. On October 24, 2005, the South Florida area, including greater Ft. Lauderdale, was being impacted by Hurricane Wilma.

4. At 7:00 a.m. on October 24, 2005, Pablo Muñoz contacted Plaintiff Miami Yacht Divers, Inc. ("Miami Yacht") to request that Plaintiff's sole employee[2], Daniel Delmonico, travel to Muñoz's vessel, the S/V Southern Cross ("Southern Cross"), located along the Del Mar Canal, to assist Muñoz with disentangling dock lines of the Southern Cross from those of an un-named 40' sport-fishing vessel. The un-named vessel had broken loose from its moorings and was floating down the canal when it got entangled with the Southern Cross.

5. Delmonico arrived at the Southern Cross at approximately 7:45 - 8:00 a.m. He unloaded an array of equipment onto the dock. However, the only equipment actually used during the course of the day in question was free-diving gear -- a mask,

---

[1] Any factual findings that may represent conclusions of law are adopted as conclusions of law.

[2] All other work performed by Miami Yacht is by contract workers.

fins and snorkel. Delmonico put on his mask, fins, and snorkel and got into the water to begin cutting loose the entangled lines.

6. Muñoz and Delmonico have a working relationship. Therefore, Muñoz was not expressly billed for the worked performed by Delmonico on the day in question.[3]

7. At approximately 9:00 a.m., Muñoz and Delmonico heard a voice from the other side of the canal alerting them to an oncoming vessel. They looked up and noticed the All Access floating down the canal. The engine was off and there was no one on the vessel.

8. The All Access had broken free of her mooring approximately 8-10 houses west of where the Southern Cross was located.

9. As the All Access moved down the canal, Delmonico (who was still wearing his free-diving equipment), jumped into the water and was able to grab a line that was attached to the stern of the All Access. During this time, the wind was blowing and there was some debris in the water. Nevertheless, Delmonico had already spent over an hour in the water tending to the Southern Cross.

10. Delmonico handed the line to Muñoz who was standing on the side of the canal. Muñoz tied the line to a piling which stopped the forward progress of the All Access within seconds.

11. The Court finds the testimony of Captain William Hicks, expert witness for

---

[3] Delmonico did receive payment in the amount of $25,000 from the owner of the unnamed vessel which was entangled with the Southern Cross. Muñoz received a portion of Delmonico's recovery and will similarly receive a portion of any award ordered by this Court in the instant case.

the Defendants, credible. He testified that based on Delmonico's ability to swim to the boat in the short window of time available and Muñoz's ability to tie the vessel such that it quickly came to a stop, the vessel was likely moving at approximately 1.5 knots down the canal. Other than an ability to swim, no specialized training, equipment or skill was needed to salvage the vessel.

11. But for the salvage operation, the All Access would have continued down the canal and could have damaged itself, other vessels or docks.

12. Once the All Access was secured, the men checked the interior and exterior of the vessel to ensure that it was still water tight. They then moved the vessel closer to where they were working on the Southern Cross and returned to disentangling the Southern Cross. About every 30 minutes (over the course of two hours), either Delmonico or Muñoz would walk over to the All Access, which was now right next to the Southern Cross, to ensure the safety and condition of the vessel. Delmonico also did one more hull dive to ensure that the vessel remained water tight.

13. The entire salvage operation lasted approximately 30 minutes – one minute to catch and secure the vessel and an additional 20 - 30 minutes inspecting it.

14. At approximately 12:00 noon, Cohen arrived on the scene and he and Delmonico discussed the events and efforts surrounding the salvage. They jointly transported the Vessel back to its berth further up the Del Mar Canal where contact information was exchanged.

15. The post casualty value of the vessel is $300,000 as both determined and agreed to by the parties to this litigation.

16. A Letter of Undertaking in the amount of: $95.000.00, has been posted

with the Clerk of this Court.

## CONCLUSIONS OF LAW

1. This case is within the Admiralty and Maritime Jurisdiction of this Court.

2. This Court has jurisdiction over the parties and the subject matter. Jurisdiction over the *in rem* yacht is established by stipulation of the Parties and by a Letter of Undertaking provided by the Owner/Insurer of the Vessel in lieu of arrest of the Vessel.

3. For a successful salvage action to be maintained, a salvor must prove three elements: (a) there must be peril placing the property at risk of loss, destruction or deterioration; (b) the salvage service must be voluntarily rendered and not required by an existing duty or by special contract; and (c) the salvage efforts must be successful, in whole or in part. The Sabine, 101 U.S. 384, 384 (1879); Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985).

4. Miami Yacht proved all elements required to establish that a successful salvage occurred in this case for which it should be compensated.

5. Having determined that a salvage situation exists, the next consideration is the award due to the salvor. "[T]here is no precise mathematical formula to determine the amount of a proper salvage award." Atlantis Marine Towing, Inc. v. M/V "Elizabeth," 346 F. Supp. 2d 1266, 1275 (S.D. Fla. 2004). Instead, "admiralty courts have established numerous elements the court should consider and balance when determining the amount of the salvage award." Id. at 1272. These elements are: "(1) the labor expended by the salvors in rendering the salvage service; (2) promptitude,

skill, and energy displayed in rendering the service and saving the property; (3) the value of the property employed by the salvors in rendering the service and the danger to which such property was exposed; (4) the risk incurred by the salvors in securing the property from the impending peril; (5) the value of the property saved; and (6) the degree of danger from which the property was rescued." Id. (citing Southern Most Marine Services, Inc. v. One (1) 2000 Fifty Four Foot (54') Sea Ray named M/V "Potential," 250 F. Supp. 2d 1367, 1377-78 (S.D. Fla. 2003); The Blackwall, 77 U.S. 1, 14 (1869); Treasure Salvors, Inc. v. The Unidentified, Wrecked & Abandoned Sailing Vessel, 556 F. Supp. 1319, 1340 (S.D. Fla. 1983)).

6.      After considering all the evidence and applying the facts to the law, the salvage factors in the instant case indicate that this was a low level salvage. Such a conclusion is deduced from an analysis of each of the six factors which determine an appropriate salvage award:

a.      The labor expended by the salvors in rendering the salvage service to the All Access was minimal. Delmonico was able to swim to the vessel in a matter of seconds and once he passed the stern line to Muñoz, the vessel's forward progress was halted within seconds. The balance of the approximately 30 minutes expended by the salvors involved moving the vessel to a dock and inspecting it for damage.

b.      The salvors displayed a degree of promptitude and energy when rendering the service and saving the property; however, other than strong swimming abilities, no special skills were required.

c.      The value of the property employed by the salvors in rendering the service is negligible. The only equipment used by Delmonico included a diving mask,

fins and a snorkel. Although Delmonico had other equipment at his disposal, the equipment was brought to the location in response to Muñoz's call regarding the Southern Cross. No additional equipment was necessary or employed because of the salvage of the All Access.

        d.     The risk incurred by the salvor in securing the property from the impending peril was low to moderate. Despite the recent passage of Hurricane Wilma, the salvor was working in the relatively protected waters of a canal, and the All Access was not traveling very quickly. There was some wind and a heavier than normal current as well as some debris in the water. Regardless, Delmonico found the conditions safe enough for him to enter the water and disentangle the lines of the Southern Cross without hesitation. Delmonico was in the water for over an hour before rendering assistance to the All Access. It is further noted that another person across the canal felt it safe enough to be outside his or her home. Although some risk was involved, it was minimal.

        e.     In the present matter, the parties have stipulated that the post-casualty value of the property salvaged, the All Access, is $300,000.

        f.     Finally, the Court turns to the degree of danger from which the All Access was rescued. It is uncontested that the All Access would have continued traveling down the canal. It may have damaged itself as well as other vessels and docks. It is always possible that total loss could occur, however, considering the speed at which the vessel must have been traveling, it is unlikely that this damage would have been severe.

        7.     Considering all the circumstances surrounding this case, the Court finds

that Miami Yacht is entitled to a voluntary salvage award of 7.5-percent of the All Access's post-salvage value. As stated by the Defendants' expert, this was a low level salvage warranting an award of 5-10 percent of the vessel's value. There were no special skills or equipment required for the salvage; nor does the Court find that Delmonico or the vessel was placed in a significant amount of danger. Nevertheless, the Court finds that an award at the middle that range is justified in light of the fact that this salvage occurred during hurricane conditions and therefore exposed Delmonico to slightly more risk of injury than in normal weather conditions. Since the post-salvage value of the All Access is $300,000, Miami Yacht is entitled to a salvage award of $22,500.

8. A professional salvor is entitled to an increment in its salvage award to encourage the professional salvage profession. B.V. Bureau Wijsmuller v. United States, 487 F. Supp. 156, 172-73 (D.C.N.Y. 1979). "Generally, a professional salvor is regarded as an individual, company or corporation devoted to the business of rescuing ships and property in distress or navigable waters. The category should not include . . . the harbor or deep-sea tug operator who is a part-time salvor under contract, performing what he sometimes designates as 'distress towage.'" Id. at 173 (internal quotations omitted).

9. While Miami Yacht does perform some salvage services, the majority of its business is dedicated to underwater dive services such as cleaning, repairs and shipyard work. Delmonico has only salvaged 20 vessels in the last 15 years. Therefore, Miami Yacht is not entitled to an uplift.

10. Attorney fees may be awarded by the Court in admiralty cases for acts of

bad faith either in the salvage action itself or in litigation or arbitration of the dispute. See, e.g. Reinholtz v. Retriever Marine Towing & Salvage, No. 92-14141-CIV-DAVIS, 1994 WL 930679, at *2 (S.D. Fla. Mar. 25, 1994).

11. The Court finds no bad faith in the litigation of this dispute. Therefore, Miami Yacht is not entitled to an award of attorney's fees.

12. The parties agree that Miami Yacht is entitled to an award of prejudgment interest from October 24, 2005 thru the date of Final Judgment in this matter. Prejudgment interest shall be calculated by computing the average of the prevailing Treasury Bill rates over the applicable period. Anderson v. McAlister Towing & Transportation Co., 94 F.Supp. 2d 1273, 1277 (S.D. Ala. 2000) (citing Ingersoll Milling Machine Co. v. M/V Bodena, 829 F.2d 293, 310 (2d Cir. 1987)). If the parties cannot agree on an award of prejudgment interest, they shall have until the close of business on September 28, 2007 to file supplemental memoranda of law addressing the disputed rate.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Miami Yacht Divers, Inc. shall recover $22,500.00 plus prejudgment interest from Defendants M/V All Access, *in rem*, and Jeffrey B. Cohen, Wachovia Bank, N.A. and XL Insurance Company of New York, Inc., *in personam*, jointly and severally.

2. A separate Final Judgment will be entered consistent with the Court's

Findings of Facts and Conclusions of Law.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 29TH day of August, 2007.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies to counsel of record on CM/ECF